UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re Robert Allen Drengacz, Debtor. | Bankruptcy No. 11-B-82339 Chapter 13 Judge Manuel Barbosa |
|---|---|

## MEMORANDUM OPINION

The Debtor has objected to the amount and priority status of his ex-wife Darlene Vogelsberg's proof of claim for $24,109.96, of which she has asserted that $17,467.38 should be granted priority status as a past-due domestic support obligation. For the reasons set forth below, the entire claim will be allowed, but only $5,836.69 will be granted priority treatment, with the remaining $18,273.27 allowed only as a general unsecured claim.

## JURISDICTION

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed for protection under Chapter 13 of the Bankruptcy Code on May 23, 2011.

Page 1 of 11

In his initial bankruptcy petition, he scheduled a priority debt under Section 507(a)(1) for a domestic support obligation of $905 for "Child Support ... 2005-2011" owed to the Illinois Department of Healthcare "C/O Darlene Vogelsburg." Ms. Vogelsberg is the Debtor's ex-wife. The Debtor listed no other debt to Ms. Vogelsberg, but did list a general unsecured claim to Ms. Vogelsberg's attorney in the divorce proceeding, Cynthia Briscoe, of $19,300 for "2011 ... Attorney's Fees & Notice." The Debtor filed an Amended Schedule E on March 27, 2012, increasing the amount of the priority claim of the Illinois Department of Healthcare C/O Darlene Vogelsberg to $6,502, and adding Darlene Vogelsberg individually for Child Support for 2011, but listing her amount of claim only as "Notice."

On August 17, 2011, the Illinois Department of Healthcare and Family Services (the "Department") filed a proof of claim (Claim 9-1) for $6,502.23 for "child support arrears owed [through] IHFS for Darlene Vogelsberg," and asserted priority treatment under Section 507(a)(1) for the entire amount as a domestic support obligation.[1] The proof of claim had an attached calculation worksheet, and stated that the calculation "was done for Proof of Claim in Bankruptcy as of the date of filing.... Interest will continue to accrue on the unpaid support until paid in full."

On October 3, 2011, Ms. Vogelsberg filed a proof of claim (Claim 11-1) asserting a claim for $30,670.78 for "Divorce support obligation" and claiming priority treatment for $10,021.46 of the amount as a domestic support obligation under Section 507(a)(1). The proof of claim contained a wage deduction order entered by the state court on the Debtor's employer on April 27, 2011 for a

---

[1] Under 305 ILCS 5/10-1, by "accepting financial aid under [the Illinois Public Aid Code], a spouse or a parent or other person having custody of a child shall be deemed to have made assignment to the Illinois Department for aid ... of any and all rights, title, and interest in any support obligation, including statutory interest thereon, up to the amount of financial aid provided. The rights to support assigned to the Department of Healthcare and Family Services (formerly Illinois Department of Public Aid) or local governmental unit shall constitute an obligation owed the State or local governmental unit by the person who is responsible for providing the support, and shall be collectible under all applicable processes."

judgment of $19,281.35 plus 9% simple interest and costs of $1,244.36. The proof of claim also contained a payment history showing a total outstanding balance as of May 23, 2011, of $10,021.46, of which $8,418.41 was principal and $1,603.05 was interest due. Ms. Vogelsberg filed an amended proof of claim (Claim 11-2) on October 4, 2011, with no apparent changes from the first proof of claim.

On March 23, 2012, the Debtor filed an objection to Ms. Vogelsberg's claim, arguing that the priority claim for $10,021.46 in past-due child support was a duplicate claim of the Department of Healthcare's Claim 9-1. Ms. Vogelsberg filed another amended proof of claim (Claim 11-3) on April 3, 2012, again asserting a total claim of $30,670.78 for "Divorce support obligation," but increasing the amount asserted as entitled to priority under Section 507(a)(1) to $23,969.61. The amended proof of claim gave no explanation for the increase, and attached the same "child support payment history" listing $10,021.46 as due as of the petition date. On April 3, 2012, Ms. Vogelsberg filed another amended proof of claim (Claim 11-4), asserting the same amounts as in Claim 11-3, but attaching a copy of the November 15, 2006, Judgment of Dissolution of Marriage, a copy of a judgment of the state court entered on October 9, 2009, and a further itemization. The October 9th Order determined and ordered that the child support arrears of that date, including interest as of August 31, 2009, was $13,598.81, and that the unsatisfied portion of the non-child support portion of the dissolution judgment including interest to date was $19,281.35. The itemization clarified that Ms. Vogelsberg sought $10,021.46 as priority child support arrears under the October 9th Order, and of the $19,281.35 non-child support portion of the October 9th Order, sought $13,948.15 as priority and $6,642.58 as nonpriority. The itemization further broke down the priority portion as $853.32 for

late charges on mortgage payments, $370 as principal reduction of the mortgage, $6,593.37 in real estate taxes, $3,543.53 in credit card payments on joint debt, $120 in I-Pass (tollway) charges, $112.50 as one half a well and septic report, $895 as one half of the Tae Kwon Do fees of their child, $100 as one half of the school fees for the child, $51 as one half a dentist bill for the child, $65.07 in judgment interest through the petition date, and $1,244.36 in court costs. On May 10, 2012, Ms. Vogelsberg filed a final amended proof of claim (Claim 11-5), in which she reduced the total amount sought to $24,109.96 and reduced the amount entitled to priority to $17,467.38.[2] The supporting documentation was essentially the same as for Claim 11-4, except the itemizations reflected that she reduced the $10,021.46 in child support arrears sought by $6,502.23 to $3,519.23, to reflect the duplicate nature of the claim sought by the Illinois Department of Healthcare.

The Debtor filed an amended objection to Claim 11-5 on June 1, 2012. The Debtor claims that the itemization attached to the Illinois Department of Healthcare shows that the arrearage for child support was only $6,502.23, and therefore objects to Ms. Vogelsberg's independent claim for $3,519.23 in child support above that amount. The Debtor also acknowledged that the $1,046 in Tae Kwon Do tuition, school costs and dental bills of their child would be entitled to priority as child support, but contests that the remainder of the non-child support judgment should only be allowed as a general unsecured claim. Ms. Vogelsberg filed a response, which included a copy of an order entered by the divorce court on June 22, 2005, which had ordered the Debtor to pay and keep current on the mortgage, insurance and real estate taxes on their marital abode. The parties presented brief

---

[2]Ms. Vogelsberg apparently first incorrectly filed this as a new claim (Claim 12-1) by selecting the wrong event code in the Court's electronic filing system, though she did mark the box to indicate it was an amended claim in the form itself. The Clerk's office redocketed the proof of claim as an amended proof of claim (Claim 11-5), but Claim 12-1 remains on the claims register. Claim 12-1 will be disallowed as a duplicate of Claim 11-5.

oral argument on October 5, 2012, but did not ask to present any evidence other than that attached to the proofs of claim and pleadings.

## DISCUSSION

A. <u>General Standard for Objection to Proof of Claim</u>

A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Therefore, once a creditor files a proper proof of claim, "a bankruptcy court must allow the claim unless a party in interest objects and produces evidence sufficient to rebut the claim" and even then only if the objection "falls under one of nine statutorily defined exceptions" set forth in Section 502(b). <u>In re Hood</u>, 449 Fed. Appx. 507, 2011 WL 6144364 (7th Cir. Nov. 14, 2011). On the other hand, the prima facie showing is rebuttable and while the objecting party must produce sufficient evidence to rebut it, the ultimate burden of proof is part of the claim itself and who bears that burden is a matter of nonbankruptcy law. <u>Raleigh v. Ill. Dep't of Revenue</u>, 530 U.S. 15, 20-22 (2000); <u>In re Olde Prairie Block Owner, LLC</u>, 452 B.R. 687, 695 (Bankr. N.D. Ill. 2011).

B. <u>Objection as to the Amount of Child Support Arrears</u>

The Debtor argues that any portion of the judgment for child arrearage in excess of the Department of Healthcare's claim has already been satisfied by prepetition payments from the

Debtor.[3] Under Illinois law, once a party seeking to enforce a judgment for child support arrears has "established the existence of the obligation itself, the [judgment debtor] bore the burden of establishing the extent of any payments he made." In re Marriage of Smith, 806 N.E.2d 727, 730 (Ill. App. Ct. 2004). The only evidence presented to the Court here were copies of the three state court orders, the history of payments attached to Ms. Vogelsberg's proof of claim and the calculation worksheet attached to the Department's proof of claim. Ms. Vogelsberg's history of payment listed each payment through the petition date individually and listed a total amount paid of $5,180.40 and a remaining balance with interest to the petition date of $10,021.46. In contrast, the Department's calculation worksheet was itemized only on an annual basis, and listed payments totaling $22,741.57 between August 31, 2009, and May 23, 2011, with a remaining balance with interest to the petition date of $6,502.23.

Considering the burden of proof and considering the limited evidence presented, I find that Ms. Vogelsberg's calculation was more persuasive. First, her itemization was more detailed than the Department's, and included individual payments rather than annual aggregations. Second, her payment history was more consistent with the October 9th Order, which had ordered the Debtor to repay the child support arrearage at a rate of $70.67 twice per month. Third, the Department's itemization is of more questionable evidentiary support, since no foundation was presented as to how the calculation was made or what data it was based on, and since the calculation worksheet could constitute inadmissible hearsay. Even if Bankruptcy Rule 3001(f) were enough to make the

---

[3] 11 U.S.C. § 502(b)(1) provides for disallowance of a claim to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

Department's proof of claim admissible evidence of the validity and amount of the Department's asserted claim, the Rule would not necessarily make other statements attached to the proof of claim admissible - such as the history of payments made. Nor would the Rule make the proof of claim admissible evidence of the nonexistence of other claims in favor of that creditor. Finally, the Department's calculation contained another discrepancy from the court orders which might help explain the discrepancy between the two calculations and make Ms. Vogelsberg's payment history more persuasive. The two calculations differ in part because Ms. Vogelsberg's only contained a history of payments of the pre-October 9 judgment child support arrears, while the Department's calculations also included payments of current child support. However, for some reason the Department's calculation listed the current support obligation as $163.08 per week, rather than $278.71 per week as stated in the judgment of dissolution. No evidence was presented to indicate that the child support obligation in the judgment of dissolution was ever subsequently modified, and therefore this appears to be an error. This understatement of the Debtor's obligations means that the Department's calculation would have understated the remaining obligation by as much as $10,406.70. I therefore find Ms. Vogelsberg's calculation to be more accurate, and the Debtor's objection to her claim will be denied in that respect. This means that Ms. Vogelsberg's claim for $3,519.23[4] in child support arrears will be allowed. The Debtor raised no objection to the amount of the remaining $20,590.73 portion of Ms. Vogelsberg's claim against him (disputing only its priority), and therefore that portion will be allowed as to amount as well.

---

[4] $10,021.46 minus the Department's overlapping claim for $6,502.23.

Page 7 of 11

C.     Priority Status as a Domestic Support Obligation

The Debtor's second argument is that at least a portion of Ms. Vogelsberg's claim should not be entitled to priority. While a proof of claim may be prima facie evidence of the *amount* and *validity* of a claim, a claimant bears the burden of proving that he is entitled to priority status under Section 507(a)(1). See, e.g., In re Nat'l Steel Corp., 321 B.R. 901, 905 (Bankr. N.D. Ill. 2005); 4 Collier on Bankruptcy, 507.01, 507-9 (16th Ed. Rev. 2010). Thus, in the face of the Debtor's objection, it was Ms. Vogelsberg's burden to prove that her claim was for a domestic support obligation.

> The Bankruptcy Code defines a "domestic support obligation" as:
>
> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is-
>
> (A) owed to or recoverable by (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-(i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. §101(14A). The issue raised in this case is the second element - whether the debts at issue are "in the nature of alimony, maintenance, or support." Whether a debt is in the nature of

alimony, maintenance, or support is a matter of federal bankruptcy law, not state law, and bankruptcy courts "are not bound by the labels attached to the obligation." In re Reines, 142 F.3d 970, 972 (7th Cir. 1998). Courts have used various nonexhaustive lists of factors to determine whether an obligation is in the nature of support, but the focus is generally on the intent of the parties and the divorce court. Reines, 142 F.3d at 973 (citing 20 factor list used by court in In re Daulton, 139 B.R. 708 (Bankr. C.D. Ill.1992) among others). Medical expenses for a child are generally in the nature of support. In re Seibert, 914 F.2d 102, 105 (7th Cir. 1990). The obligation to pay current mortgage payments may in some circumstances be in the nature of support, at least if necessary for the support of the spouse or child and the payments are for the house in which the spouse and child, but not the debtor, was to reside. In re Maitlen, 658 F.2d 466, 469 (7th Cir. 1981). Alimony, maintenance and support "may include the duty to pay attorneys' fees incurred by the former spouse in connection with a divorce proceeding, the obtaining and enforcement of alimony and/or support awards, or for custody disputes." Eden v. Robert A. Chapski, Ltd., 405 F.3d 582, 586-87 (7th Cir. 2005) (quoting In re Maddigan, 312 F.3d 589, 595 (2d Cir.2002)).

    The Debtor has conceded that the arrearage for child support was in the nature of support, and has also conceded that the Tae Kwon Do tuition, school fees and dental bill were in the nature of support. In addition, the Court hereby finds that the $1,244.36 in court costs incurred in enforcing the support obligations were also in the nature of support.

    However, Ms. Vogelsberg has failed to demonstrate that the remaining obligations are entitled to priority treatment. She simply has not given the Court sufficient information to draw any such conclusion. For example, she gives no indication as to the timing or nature of the purchases

that led to the joint credit card debt. She gives no indication with respect to the I-Pass charges as to who was driving a vehicle on the Illinois Tollway and why.

As to the mortgage, tax and other expenses relating to the house, while in some cases such payments might constitute support, Ms. Vogelsberg has given insufficient information for the Court to conclude that they were necessary for Ms. Vogelsberg's or her child's support. For example, Ms. Vogelsberg has given no information as to whether she lived in the house or was forced to make any mortgage or tax payments herself. The June 22, 2005 order obligated the Debtor to make the payments, but also expressly denied Ms. Vogelsberg's prayer for exclusive possession of the marital abode. Additionally, the November 15, 2006 Judgment of Dissolution of Marriage states that at some unidentified date prior to that order the marital home was sold with net proceeds of $18,823.34, and ordered that those net proceeds be equally divided between the spouses. Even if Ms. Vogelsberg lived in the home with her child for some period after the June 22, 2005 order, no information was provided to this Court for how long that period was, or that the claims asserted relate purely to that period. The fact that the home was subsequently sold and the net proceeds were divided between the spouses indicates that the obligations related to the home may have been intended as part of a pending property settlement rather than ongoing support. In other words, the obligation may have been intended to protect the marital estate's equity in the property and the judgment against the Debtor for those amounts in the judgment of dissolution may have been intended more as an offset in favor of Ms. Vogelsberg in the property settlement to compensate for the Debtor's failure to protect the equity in the house. There is no indication whether Ms. Vogelsberg was forced to pay any mortgage payment or property tax to remain in the home, or if those amounts were simply

deducted from the proceeds at the closing. The judgment also states that the well and septic report was in connection with the sale of the home, and therefore is clearly part of the property division, not support. Therefore, Ms. Vogelsberg has failed to demonstrate that the judgment for amounts related to the marital home was in the nature of alimony, support, or maintenance.

## CONCLUSION

For the foregoing reasons, the Debtor's Amended Objection to Claim will be granted in part and denied in part. Ms. Vogelsberg's Claim 11-5 will be allowed in a total amount of $24,109.96, but will only be entitled to priority under 11 U.S.C. §507(a)(1) to the extent of $5,836.69.[5] The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered giving effect to the determinations reached herein.

DATE: November 9, 2012

The Honorable Manuel Barbosa
United States Bankruptcy Judge

---

[5] Claim 11-5 sought priority status for $65.07 in judgment interest through the petition date in the portion of the judgment claimed to be in the nature of support. Based on my ruling that not all of those items were in the nature of support, I have reduced the portion of interest granted priority accordingly, and will allow only $27.10 of that interest to be accorded priority status.

# CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on November 9, 2012.

**Jason K Nielson**
Geraci Law L.L.C.
55 E. Monroe St. Suite #3400
Chicago, IL 60603

**Fiona M. Whelan**
Lydia S. Meyer, Trustee
308 W. State Street, Suite 212
Rockford, IL 61101

**Cynthia J Briscoe**
Briscoe Law Offices
Attorney for Darlene Vogelsberg
210 North Walkup Avenue
Crystal Lake, IL 60014

_____
Kimberly Conrad, Judicial Assistant